# Exhibit A

Letter from Letitia James and Betty Rosa to Boards of Education (May 8, 2025)

("Guidance Letter")



**NYS ED**.gov

New York State
EDUCATION DEPARTMENT
Knowledge › Skill › Opportunity

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

DR. BETTY A. ROSA

LETITIA JAMES
ATTORNEY GENERAL

Commissioner of Education
President of the University of the State of New York

**Re: Joint Guidance on Harassment and Bullying at School Board Meetings**

May 8 2025

Dear Colleagues,

Boards of education are entrusted with the important responsibility of ensuring the welfare of all students in their districts. Critical parts of their work occur in public meetings, where board members have "a duty to proceed with constructive discussions aimed at achieving the best possible governance" of their school districts.[1] Unfortunately, some board members have made, and encouraged, comments during board meetings that demean and stigmatize LGBTQ+ students. These comments have included attacks on school support for LGBTQ+ student groups and on transgender and gender-expansive students' rights to use facilities, including restrooms and locker rooms, or participate on school athletic teams consistent with their gender identity—rights that remain firmly embedded in state law.[2] Comments and conduct that violate students' privacy

---

[1] *Appeals of Gill and Burnett*, 42 Ed. Dep't Rep., Decision No. 14,785 (Aug. 22, 2002), https://www.counsel.nysed.gov/Decisions/volume42/d14785; *see* N.Y. Pub. Off. Law §§ 100, 103. The elected officials who serve on local boards of education are variously referred to as "members," *see, e.g.,* N.Y. Educ. Law § 1804, and "trustees," *see, e.g., id.* § 1604. For the sake of consistency, this guidance document uses the term "members" throughout.

[2] *See* N.Y. Exec. Law § 296(4) (prohibiting public schools from denying the use of facilities, including restrooms and locker rooms, to any person on the basis of sex, gender identity, or gender expression); N.Y. Educ. Law § 12(1) (prohibiting discrimination based on a student's actual or perceived sex or gender on public-school property and at school functions); N.Y. Educ. Law § 3201-a (prohibiting discrimination based on sex, including gender identity and expression, with respect to inclusion on public schools' athletic teams); *see also* N.Y. Exec. Law § 292(35) (defining the terms "gender identity or expression" as "a person's actual or perceived gender-related identity, appearance, behavior, expression, or other gender-related characteristic regardless of the sex assigned to that person at birth, including, but not limited to, the status of being transgender"); N.Y. Educ. Law § 11(6) (defining "gender" as "actual or perceived sex," including "gender identity or expression"); N.Y. Comp. Codes R. & Reg. ("N.Y.C.R.R.") tit. 9, § 466.13(b)(1)–(2) (defining "[g]ender identity" as "having or being perceived as having a gender identity, self-image, appearance, behavior or expression whether or not that gender identity, self-image,

EXHIBIT A TO COMPLAINT

rights or create a hostile school environment harm children, sow discord in communities, and expose school districts to costly litigation.[3]

   School boards that elect to receive public comment may certainly address questions or concerns about controversial issues in public meetings. However, inflammatory remarks about the legitimacy of students' gender identity and students' equal access to educational facilities and opportunities serves no school-related purpose and may only make children feel unwelcome and excluded. SED and OAG therefore remind boards of education of their obligation to adhere to state laws and regulations that safeguard students from harassment, bullying, and the disclosure of protected student information.[4]

   The first section of this guidance discusses board members' duty to ensure that board meetings are conducted in a manner that respects the dignity and rights of all students. It also provides resources to assist board members in sustaining a safe and supportive learning

---

appearance, behavior or expression is different from that traditionally associated with the sex assigned to that person at birth," and a "transgender person [a]s an individual who has a gender identity different from the sex assigned to that individual at birth"); N.Y. State Educ. Dep't ("SED"), *Creating a Safe, Supportive, and Affirming Sch. Env't for Transgender and Gender Expansive Students: 2023 Legal Update and Best Practices* (June 2023), https://www.nysed.gov/sites/default/files/programs/student-support-services/creating-a-safe-supportive-and-affirming-school-environment-for-transgender-and-gender-expansive-students.pdf (advising school districts that New York law requires that students be allowed to use restrooms, locker rooms, and participate on athletic teams consistent with their gender identities); N.Y. State Div. of Hum. Rts. ("DHR"), *Guidance on Prots. from Gender Identity Discrimination Under the N.Y. State Hum. Rts. Law* (Jan. 29, 2020), https://dhr.ny.gov/system/files/documents/2022/04/nysdhr-genda-guidance-2020.pdf; N.Y. Legis. B. Drafting Comm'n., Governor's B. Jacket, L. 2019, ch. 008 at 18–19 (explaining that the state legislature enacted the 2019 Gender Expression Non-Discrimination Act ("GENDA") to "ensure that the public understands that discrimination on the basis of gender identity and expression is prohibited," including discrimination "because an individual has transitioned or intends to transition from one gender to another").

[3] Harassment and discrimination are unlawful when based on membership in a protected class, such as "race, color, religion, disability, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, age, marital status, or status as a victim of domestic violence." N.Y. Exec. Law § 296(4); *see also* N.Y. Const. art. I, § 11(a) (prohibiting the denial of equal protection of the laws of New York and discrimination in civil rights because of "sex, including sexual orientation, gender identity, [and] gender expression," among other protected characteristics).

[4] *See* citations and guidance cited *supra* note 2. Presidential executive orders and pronouncements purporting to restrict schools from supporting transgender students' social transition, safety, and access to athletics have not affected these rights in New York and lack the authority to undermine our state laws' "robust protections for transgender students." Letitia James and Betta A. Rosa, *Joint Statement of the Office of the Att'y Gen. and the State Educ. Dep't Regarding Transgender Students' Rts.* (Feb. 2025), https://www.nysed.gov/sites/default/files/nysed-oag-joint-statement-regarding-transgender-students.pdf; *see In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d 892, 908 (N.D. Cal. 2007) ("Executive orders, in and of themselves, do not preempt state law. Congress has the exclusive power to make laws necessary and proper to carry out the powers vested by the United States Constitution in the federal government."); *see also* Att'ys General Kwame Raoul, Andrea Joy Campbell, and Letitia James, *Joint Guidance Regarding Sch. Programs on Diversity, Equity, and Inclusion* (Mar. 5, 2025), https://ag.ny.gov/sites/default/files/publications/joint-guidance-re-school-programs-guidance-2025.pdf.

environment for LGBTQ+ students in their districts. The second section surveys legal protections that may be violated by board member conduct that permits or creates a hostile learning environment for transgender and other LGBTQ+ students. The third section reminds board members that they may be removed from office when they willfully neglect their duty or violate legal protections for students in their districts

Although this guidance focuses on the rights of LGBTQ+ students, the legal protections it discusses apply with equal force to other protected statuses, including race, sex, religion, national origin, immigration, and disability.

***Board members have a duty to conduct meetings in a manner that respects the dignity of all students.***

Board members are elected New York officials who take an oath to uphold the state and federal constitutions and faithfully discharge their duties.[5] These duties include setting education standards, developing budgets, and making personnel decisions.[6] Significant parts of this business occur during public meetings where public input, although not required by law, may assist board members in decision-making.[7] Due to the public nature of these meetings, members have a duty to engage in constructive discussion and to "comport [themselves] properly and set an example for the student body."[8] This includes avoiding "statements and actions which may tend to politicize the educational system," such as statements on social controversies outside the scope of boards' authority.[9]

Under the First Amendment, school board meetings are considered limited public fora. This means that school boards that allow public comment "may make reasonable, viewpoint-neutral rules governing the content of speech allowed," including prohibiting all comments on a particular topic that would have discriminatory, harassing, or bullying effects.[10]

School boards in New York should be mindful that their "meetings are an inappropriate venue to air personal or political grievances."[11] Members of the public can ask local school boards questions about a wide range of issues. But purely ideological statements opposing students' rights

---

[5] *See* N.Y. Const. art. XIII, § 1; N.Y. Pub. Off. Law § 10.

[6] *See* N.Y. Educ. Law §§ 1604, 1709, 1804.

[7] *See* N.Y. Pub. Off. Law § 100.

[8] *Appeals of Gill and Burnett*, *supra* note 1; *Appeal of Kozak*, 34 Ed. Dep't Rep., Decision No. 13,396 (Apr. 6, 1995), https://www.counsel.nysed.gov/Decisions/volume34/d13396.

[9] *Applications of Zamparelli*, 64 Ed. Dep't Rep., Decision No. 18,526 (Nov. 25, 2024), https://www.counsel.nysed.gov/Decisions/volume64/d18526.

[10] *Peck ex rel. Peck v. Baldwinsville Cent. Sch. Dist.*, 426 F.3d 617, 626 (2d Cir. 2005) (emphasis removed); *see Hotel Emps. & Rest. Emps. Union, Local 100 of N.Y. & Vicinity, AFL CIO v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 545–46 (2d Cir. 2002) (citing school board meetings as an example of limited public fora); *Roth v. Levittown Union Free Sch. Dist.*, No. 23-CV-0361 (RPK) (ARL), 2023 WL 6283253 (E.D.N.Y. Sept. 26, 2023) (upholding reasonable restriction on speech at school board meeting), *appeal dismissed,* No. 23-7992, 2024 WL 5111915 (2d Cir. May 23, 2024).

[11] *Applications of Zamparelli*, *supra* note 9.

EXHIBIT A TO COMPLAINT

under New York law are an unproductive diversion from boards' important work.[12] Such statements can harm children, who unwillingly find themselves held up to public scrutiny and recrimination by members of their school community. As SED has reminded districts, research shows that LGBTQ+ students who feel harassed, stigmatized, or unwelcome at their schools suffer "lower academic outcomes and poorer mental well-being" and are more likely to miss school, drop out, and not attend college.[13] Children should not have to endure the indignity of adults making remarks about their bodies or questioning the legitimacy of their identities and life experiences in public board meetings in their school districts.

SED and OAG caution New York school boards against exposing students to these harms. For example, school boards should not entertain baseless allegations that transgender students' identities and experiences are illegitimate, or that their mere presence in school spaces and participation in school activities is harmful to other students. Nor should boards allow individuals to intentionally misgender district students—a practice that, according to research, leads to feelings of stigmatization and emotional harm, including anxiety, depression, and stress.[14]

In enacting the Dignity for All Students Act ("Dignity Act"), the legislature found that "students' ability to learn and to meet high academic standards, and a school's ability to educate its students, are compromised by incidents of discrimination and harassment including bullying, taunting or intimidation."[15] Board members who knowingly undermine the purpose of the Dignity Act by making or promoting discriminatory and harassing comments willfully neglect their duties

---

[12] Consistent with the First Amendment, boards of education may prohibit all discussion from all viewpoints on a particular topic but may *not* prohibit only the expression of a particular viewpoint on that topic. *See Curley v. Philo*, No. 07-CV-370 (GLS-DRH), 2009 WL 2152323, at *3 (N.D.N.Y. July 14, 2009) (holding that a board of education's policy prohibiting all further discussion of a specific controversy related to the district's girls' varsity soccer team was permissible under the First Amendment). Boards may also prohibit specific speech on a topic if such speech would have a discriminatory, harassing, or bullying effect. For example, a federal court recently upheld a school's decision to ban two parents from wearing wristbands to a school sports event (also a limited public forum) because those wristbands displayed symbols the school determined could have a demeaning, harassing, or bullying effect on a transgender student athlete participating in the event or on other transgender students attending the event. *Fellers v. Kelley*, No. 24-cv-311, 2025 WL 1098271 (D.N.H. Apr. 14, 2025). The court determined that this was not viewpoint discrimination, finding that "the School District did not act because [the parents] communicated an opinion opposing transgender players participating in girls' sports," but because "it reasonably concluded that [the parents] communicated a symbolic message (however quietly and passively) that was demeaning, harassing, and harmful to, and targeted at, a specific transgender player as well as other transgender students." *Id.*

[13] SED, *Creating a Safe, Supportive, and Affirming Sch. Env't, supra* note 2, at 7 (citing Joseph G. Kosciw, Caitlin M. Clark, and Leesh Menard, *The 2021 National Sch. Climate Survey: The Experiences of LGBTQ+ Youth in Our Nation's Schs.* (2022), https://www.glsen.org/sites/default/files/2022-10/NSCS-2021-Full-Report.pdf).

[14] *See* Kevin A. McLemore, *A Minority Stress Perspective on Transgender Individuals' Experiences with Misgendering*, 3 STIGMA AND HEALTH, 53, 54 (2018). "Misgendering" means "[a]ttributing a gender to someone that is incorrect or does not align with the person's gender identity." SED, *Creating a Safe, Supportive, and Affirming Sch. Env't, supra* note 2, at 10.

[15] N.Y. Educ. Law § 10.

to "engage in constructive discussion" and ensure effective functioning of board operations.[16] Such conduct sends a message to LGBTQ+ students that their dignity, safety, and wellbeing are not valued in their school community, contrary to the Dignity Act's requirements and purpose.[17]

Board members seeking guidance on creating a safe and inclusive environment for all students in their districts can consult resources published by our offices. SED's Culturally Responsive-Sustaining Education Framework provides tools and guidance to "help education stakeholders create student-centered learning environments that affirm cultural identities; foster positive academic outcomes; develop students' abilities to connect across lines of difference; elevate historically marginalized voices; empower students as agents of social change; and contribute to individual student engagement, learning, growth, and achievement through the cultivation of critical thinking."[18] SED's best practices for "Creating a Safe, Supportive, and Affirming School Environment for Transgender and Gender Expansive Students" likewise provides important additional guidance to district leaders and stakeholders.[19] These and other resources will assist board members in fulfilling their duty to create a safe and welcoming environment for all students.[20]

***Board members who permit the harassment of LGBTQ+ students may expose their school districts to liability under New York law.***

New York law is clear that the opportunity to obtain an education without discrimination based on sex, sexual orientation, gender identity, or gender expression is a civil right.[21] Conduct that denies LGBTQ+ students equal protection of the law or otherwise subjects them to "any

[16] *See Appeals of Gill and Burnett, supra* note 1; *Appeal of Kozak, supra* note 8.

[17] *See* N.Y. Educ. Law §§ 10, 12.

[18] SED, *Culturally Responsive-Sustaining Educ. Framework,* https://www.nysed.gov/sites/default/files/programs/crs/culturally-responsive-sustaining-education-framework.pdf; *see also* SED, *Toolkit for Raising Awareness of the N.Y. Culturally Responsive-Sustaining Educ. Framework: Guidance Document for Sch. and Dist. Leaders* (2021), https://www.nysed.gov/sites/default/files/programs/crs/cr-s-awareness-leaders-in-schools-and-districts-pd-toolkit-guidance-document.pdf.

[19] SED, *Creating a Safe, Supportive, and Affirming Schs. Env't, supra* note 2.

[20] *See, e.g.,* GLSEN, *Safe Space Kit: A Guide to Supporting Lesbian, Gay, Bisexual, Transgender, and Queer Students in Your Sch.* (2019), https://www.glsen.org/sites/default/files/2019-11/GLSEN%20English%20SafeSpace%20Book%20Text%20Updated%202019.pdf; Eric T. Schneiderman and MaryEllen Elia, *Joint Guidance Clarifying N.Y. Schs.' Responsibility to Protect Transgender Students* (Feb. 28, 2018), http://www.nysed.gov/common/nysed/files/nysed-oag-joint-guidance-letter-2-28-18.pdf; Hum. Rts. Campaign Found., *Schs. in Transition: A Guide for Supporting Transgender Students in K-12 Schs.* (2015), https://hrc-prod-requests.s3-us-west-2.amazonaws.com/welcoming-schools/documents/HRCF-Schools-In-Transition.pdf?mtime=20210516092237&focal=none; SED, *Dignity for All Students Act Student Discrimination, Harassment and Bullying Prevention and Intervention: Guidance for Local Implementation* (July 2013), https://www.nysed.gov/sites/default/files/programs/student-support-services/dasa-guidance-for-local-implementation.pdf.

[21] N.Y. Exec. Law § 291(2) ("The opportunity to obtain an education … without discrimination because of age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, marital status, or disability … is hereby recognized as and declared to be a civil right.").

5

discrimination in their civil rights" on the basis of these or other protected characteristics violates the New York State Constitution and Civil Rights Law.[22]

State law also prohibits the failure to act in some instances: the New York State Human Rights Law makes it unlawful for school districts to "*permit* the harassment of any student" because of the student's sex, sexual orientation, gender identity, or gender expression.[23] Boards of education that permit harassing and stigmatizing comments about LGBTQ+ students in public meetings may expose districts to liability under this law.[24]

Boards of education whose acts or omissions lead to the bullying or harassment of LGBTQ+ students may also breach their common-law duty to provide adequate supervision.[25] School boards owe a duty of care to the students in their schools, including the duty to provide "supervision and protection" comparable to "that of a parent of ordinary prudence placed in the same situation and armed with the same information."[26] Boards that allow students in their care to be bullied or harassed may be liable for the foreseeable emotional injuries stemming from that conduct.[27]

### *Board members may be removed if they willfully neglect their duty or engage in official misconduct.*

Board members may be removed by the Commissioner of Education if they: (1) violate the Education Law or another law "pertaining to [public] schools," including the state Human Rights Law; (2) willfully neglect their duties as public officers; or (3) willfully disobey a "decision, order,

---

[22] N.Y. Const. art. I, § 11(a); N.Y. Civ. Rts. Law § 40-c.

[23] N.Y. Exec. Law § 296(4) (emphasis added); *see* DHR, *Guidance on Prots. from Gender Identity Discrimination Under the N.Y. State Hum. Rts. Law*, *supra* note 2.

[24] Boards of education should be mindful that the New York State Legislature amended the state Human Rights Law in 2019 to ensure that it would "be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with [comparable] provisions … have been so construed." N.Y. Exec. Law § 300; *Cooper v. Franklin Templeton Invs.*, No. 22-2763-CV, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023). Accordingly, merely permitting the harassment of a student on the basis of a protected characteristic, such as gender identity, may well be sufficient for liability under the state Human Rights Law, even if the harassment does not directly result in the creation of a disparately hostile environment.

[25] *See Shante D. by Ada D. v. City of N.Y.*, 190 A.D.2d 356, 361 (1st Dep't 1993), *aff'd,* 83 N.Y.2d 948 (1994) ("School boards generally have a duty to supervise their students with the same degree of care as a parent would exercise in the same circumstances."); *see also Cavello v. Sherburne-Earlville Cent. Sch. Dist.*, 110 A.D.2d 253, 255 (3d Dep't 1985) (districts can be held liable "for emotional suffering due to [their] negligent supervision of other students").

[26] *C.M. v. W. Babylon Union Free Sch. Dist.*, 231 A.D.3d 809, 811 (2d Dep't 2024) (quotation marks and citation omitted). This duty "derives from the simple fact that a school, in assuming physical custody and control over its students, effectively takes the place of parents and guardians." *Mirand v. City of N.Y.*, 84 N.Y.2d 44, 49 (1994).

[27] *See Spring v. Allegany-Limestone Cent. Sch. Dist.*, 221 A.D.3d 1474, 1475–77 (4th Dep't 2023) (finding evidence that district was "negligent in failing to adequately address and safeguard against harassment and bullying" of student), *reargument denied,* 224 A.D.3d 1335 (2024).

EXHIBIT A TO COMPLAINT

rule or regulation" of the Regents or the Commissioner of Education.[28] Applications for removal must be initiated within 30 days of the alleged misconduct by a person aggrieved by the board member's actions.[29] Boards may also remove one of their own members, after a hearing, for "official misconduct."[30] The Commissioner has defined official misconduct as an "unauthorized exercise of the member's powers or the intentional failure to exercise those powers to the detriment of the school district."[31]

Removal also may be warranted when a board member "engages in a pattern of inappropriate, antagonistic and offensive conduct that interferes with the board's ability to function."[32] Willfully permitting the harassment of students on the basis of sex, sexual orientation, gender identity, gender expression, or other protected characteristics meets this standard.[33] Further, board members may neglect their duty to "set an example for the student body" if they condone discriminatory or harassing comments about LGBTQ+ students.[34]

Additionally, board members who willfully make unlawful disclosures of confidential student information learned in the course of their official duties may be subject to removal.[35] Such confidential information could include students' names or "personal characteristics or other information that would make it possible to identify the student with reasonable certainty."[36]

Removal of a board member is a drastic measure, but even an unsuccessful application for removal may pose a financial burden to schools and an unwelcome distraction from school boards'

---

[28] N.Y. Educ. Law § 306(1); *see* N.Y. Exec. Law § 296(4). The misconduct must occur while the board member is acting in their official capacity. *See Applications of Zamparelli*, *supra* note 9. Further, the misconduct "must have been intentional and [done] with a wrongful purpose." *Application and Appeal of Moss*, 58 Ed. Dep't Rep., Decision No. 17,602 (March 19, 2019), https://www.counsel.nysed.gov/Decisions/volume58/d17602. "[V]iolation of a board's bylaws or policies alone is not a sufficient basis for removal of a member of a board of education in a proceeding pursuant to Education Law § 306." *Id.*

[29] N.Y. Educ. Law § 310; 8 N.Y.C.R.R. § 275 (setting forth procedures, requirements, and instructions for filing a Commissioner's Appeal).

[30] N.Y. Educ. Law § 1709(18).

[31] *Appeals of Ziegelbauer*, 62 Ed. Dep't Rep., Decision No. 18,143 (July 7, 2022), https://www.counsel.nysed.gov/Decisions/volume62/d18143.

[32] *Appeals of Gill and Burnett*, *supra* note 1.

[33] *See* N.Y. Exec. Law § 296(4); *see also* N.Y. Educ. Law § 3201-a; N.Y. Civil Rts. Law § 40-c.

[34] *Appeals of Gill and Burnett*, *supra* note 1; *Appeal of Kozak*, *supra* note 8; *see* N.Y. Educ. Law §§ 10, 12.

[35] N.Y. Educ. Law § 306(1); *see* N.Y. Gen. Mun. Law § 805-a(1)(b) (prohibiting municipal officers from "disclos[ing] confidential information acquired … in the course of [their] official duties"); N.Y. Educ. Law § 2-d (prohibiting the unauthorized release of students' personally identifiable information); 8 N.Y.C.R.R. § 200.5(e)(2) (same). *See Appeals of Ziegelbauer*, *supra* note 31 (denying board member's appeal of board of education's decision to remove her from office for disclosing confidential information obtained in the course of her duties); *Appeal of Nelson*, 49 Ed. Dep't Rep., Decision No. 15,964 (Aug. 14, 2009), https://www.counsel.nysed.gov/Decisions/volume49/d15964 (same).

[36] 8 N.Y.C.R.R. § 200.5(e)(1)(iv) (defining confidential "personally identifiable data" as including any "list of personal characteristics or other information that would make it possible to identify the student with reasonable certainty").

important work. Thus, SED and OAG caution board members to conduct their public meetings in a manner that ensures respect for the dignity and rights of all students, including LGBTQ+ students.

***

SED and OAG are committed to ensuring that our state's schools are safe and welcoming spaces for students of all sexes, sexual orientations, gender identities, and gender expressions. Students and other community members who have experienced or witnessed harassment or discrimination on the basis of these or other protected characteristics may lodge a complaint with OAG or seek assistance from other agencies, including SED, the New York State Division of Human Rights, and, in New York City, the Commission of Human Rights. Impacted students, parents, and other caregivers are also encouraged to seek assistance from community organizations and other non-profits, which may provide additional forms of support for students experiencing discrimination, bullying, or harassment in their school communities.

Public schools can request assistance from SED for support and resources to create a safe and supportive school environment for all students. For further information or questions, please contact the Student Support Services Office at (518) 486-6090.

For additional information and resources regarding transgender students in schools, please see the appendix below for a small sample of available resources.

Sincerely,

Letitia James
Attorney General

Betty A. Rosa
Commissioner of Education

EXHIBIT A TO COMPLAINT

**Appendix: Resources**

*New York State Education Department*

The Dignity for All Students Act

The Dignity for All Students Act seeks to provide the state's public elementary and secondary school students with a safe and supportive environment free from discrimination, intimidation, taunting, harassment, and bullying on school property, a school bus, and/or at a school function.

Creating a Safe, Supportive, and Affirming School Environment for Transgender and Gender Expansive Students: 2023 Legal Update and Best Practices

SED's recent guidance on creating a safe and supportive educational environment for transgender and gender expansive students.

SED-OAG Joint Guidance, August 9, 2023

SED and OAG's joint guidance related to the role of diversity, equity, and inclusion in creating a safe and supportive environment in which all students can realize their full potential.

*New York City Department of Education*

Guidelines to Support Transgender and Gender Expansive Students

The New York City Department of Education ("NYC DOE") guidance supports transgender and gender expansive students attending New York City's public schools. While the guidance does not apply statewide, it is offered as a resource.

The NYC DOE's Guidelines on Gender Inclusion and Dress Code Guidelines may also be a helpful resource for public schools.

*Gender Support Plans*

These plans help create a shared understanding among school staff, parents/guardians, and students about the ways in which students' authentic gender will be accounted for and supported at school.

New York City Guidelines to Support Transgender and Gender Expansive Students – Supporting Students

9