UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KERRY WACHTER, *et al.,*

                                            *Plaintiffs*,

            -against-

                                                                    1:25-CV-01718
                                                                     (GTS/CBF)

LETITIA JAMES, *et al.,*

                                            *Defendants*.

_____


**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).**

LETITIA JAMES
Attorney General of the State of New York
Syracuse Regional Office
Attorney for Defendants
300 S. State Street, Ste. 300
Syracuse, NY 13202


By:    Aimee Cowan, Esq.
       Assistant Attorney General, of Counsel
       Bar Roll No. 516178
       Telephone: (315) 448-4800
       Fax: (315) 448-4853
       E-mail: Aimee.Cowan@ag.ny.gov

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................iii

PRELIMINARY STATEMENT.................................................................................1

STATEMENT OF FACTS.........................................................................................2

STANDARD OF REVIEW........................................................................................4

ARGUMENT..............................................................................................................6

**POINT I:    PLAINTIFFS LACK STANDING.........................................................6**

   A. Plaintiffs expressly state that their speech will not be chilled.................................7

   B. Plaintiffs have not plausibly alleged a credible threat of enforcement that is fairly traceable to the Guidance Letter....................................................................................9

**POINT II:    PLAINTIFFS FAIL TO ESTABLISH A CLEAR OR SUBSTANTIAL LIKELIHOOD THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FIRST AMENDMENT CLAIM...........................12**

   A. Plaintiffs cannot show a likelihood of succeeding on their First Amendment viewpoint discrimination claim because they have not alleged a restriction on Plaintiffs' speech............................................................................................12

      1. The only government action at issue is permissible government speech...............13

      2. Plaintiffs do not allege any other basis for a viewpoint discrimination claim...........16

      3. School board members and parents, including Plaintiff Wachter, have continued expressing a range of perspectives regarding transgender students' rights in schools with no legal sanction.....................................................................17

   B. Plaintiffs cannot show a likelihood of succeeding on their vagueness and overbreadth claim..........................................................................................................18

   C. The School Board Plaintiffs cannot show a likelihood of succeeding on their compelled speech claim..................................................................................................20

**POINT III:    PLAINTIFFS FAIL TO SHOW THEY WILL SUFFER IRREPARABLE HARM ABSENT THE DRASTIC RELIEF THEY SEEK.......................22**

**POINT IV: THE EQUITIES BALANCE IN FAVOR OF THE DEFENDANTS, AND ISSUANCE OF AN INJUNCTION IS NOT IN THE PUBLIC INTEREST…24**

CONCLUSION……………………………………………………………………………...26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agudath Israel of Am. v. Cuomo*,
  983 F.3d 620 (2d Cir. 2020)…………………………………………………………23

*Albright v. Oliver,*
  510 U.S. 266 (1994)…………………………………………………………………4

*Alexander v. Sutton*,
  747 F. Supp. 3d 520 (E.D.N.Y. 2024)……………………………………………25

*Antonucci v. Winters*,
  767 F. Supp. 3d 122 (D. Vt. 2025)………………………………………………..23

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)………………………………………………………………4, 5

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963)………………………………………………………..…16, 17

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)…………………………………………………………………5

*Bennett v. Spear*,
  520 U.S. 154 (1997)………………………………………………………………..10

*Best Payphones, Inc. v. Dep't of Info. Tech. & Telecomms. of City of N. Y.*,
  5 N.Y.3d 30 (2005)…………………………………………………………………14

*Boehringer Ingelheim Pharms., Inc. v. U.S. Dep't of Health & Hum. Servs.*,
  150 F.4th 76 (2d Cir. 2025)……………………………………………………..20, 21

*Bordell v. Gen. Elec. Co.*,
  922 F.2d 1057 (2d Cir. 1991)…………………………………………………..7, 9, 12

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973)……………………………………………………………...19

*Bronx Harbor Health Care Complex, Inc. v. McDonald*,
  No. 1:24-CV-1573 (GTS/PJE), 2025 WL 3761723 (N.D.N.Y. Dec. 30, 2025)………..5, 24

*Cerame v. Slack*,
  123 F.4th 72 (2d Cir. 2024)……………………………………………………...7, 9

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010)……………………………………………………………5, 6, 25

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)……………………………………………………...8, 9, 11, 12

*Collins v. Putt*,
    979 F.3d 128 (2d Cir. 2020)…………………………………………………....14

*Curley v. Village of Suffern*,
    268 F.3d 65 (2d Cir. 2001)……………………………………………….…18

*Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*,
    158 F.4th 732 (6th Cir. 2025)…………………………………………………15, 17

*Dorsett v. Cnty. of Nassau*,
    732 F.3d 157 (2d Cir. 2013)………………………………………………...7, 8

*Essex Cnty. v. Zagata*,
    91 N.Y.2d 447 (1998)…………………………………………………....14

*Fellers v. Kelley*,
    No. 24-CV-311 (SM) (AJ), 2025 WL 1098271 (D.N.H. Apr. 14, 2025)………………13

*Gov't Emps. Ins. Co. v. Strut*,
    758 F. Supp. 3d 140 (W.D.N.Y. 2024)……………………………………………22

*Guan v. Mayorkas*,
    530 F. Supp. 3d 237 (E.D.N.Y. 2021)………………………………………...7, 8

*Hill v. Delaware N. Companies Sportservice, Inc.*,
    838 F.3d 281 (2d Cir. 2016)…………………………………………………13

*Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.,*
    No. 1:21-CV-00038-MKV, 2021 WL 535485 (S.D.N.Y. Feb. 12, 2021)………………23

*Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*,
    3 F.4th 887 (6th Cir. 2021)………………………………………………...15, 16

*Jackson v. Onondaga County*,
    549 F. Supp. 2d 204 (N.D.N.Y. 2008)……………………………………………..4

*Jaufman v. Levine,*
    2007 WL 2891987 (N.D.N.Y. 2007)………………………………………………4

*Lujan v. Defenders of Wildlife*,

504 U.S. 555 (1992).................................................................................6

*Massapequa Union Free Sch. Dist. v. NYS Bd. of Regents*,
No. 23-CV-7052-SJB-LGD, 2025 WL 3182580 (E.D.N.Y. Nov. 14, 2025)............16

*Massapequa Union Free Sch. Dist. v. New York State Bd. of Regents*,
No. 23-CV-7052 (MKB), 2025 WL 929710 (E.D.N.Y. Mar. 27, 2025)..............25

*Mendez v. Banks*,
65 F.4th 56 (2d Cir. 2023)....................................................25

*Meriwether v. Hartop*,
992 F.3d 492 (6th Cir. 2021)................................................15, 16

*Moms for Liberty - Brevard Cnty., FL v. Brevard Pub. Schs.*,
118 F.4th 1324 (11th Cir. 2024).............................................15, 17

*Monowise Ltd. Corp. v. Ozy Media, Inc.*,
No. 17-CV-8028 (JMF), 2018 WL 2089342 (S.D.N.Y. May 3, 2018).......................23

*Munaf v. Geren*,
553 U.S. 674 (2008).................................................................5

*Nat'l Endowment for the Arts v. Finley*,
524 U.S. 569 (1998)............................................................21

*Nat'l Org. for Marriage, Inc. v. Walsh*,
714 F.3d 682 (2d Cir. 2013)....................................................10

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024)........................................................17, 21

*New York v. Actavis PLC*,
787 F.3d 638 (2d Cir. 2015).....................................................6

*New York Coal. for Quality Assisted Living, Inc. v. Novello*,
53 A.D.3d 914 (2008)..........................................................13

*Nitke v. Ashcroft*,
253 F. Supp. 2d 587 (S.D.N.Y. 2003)..........................................7, 9

*N.Y. Progress & Prot. PAC v. Walsh*,
733 F.3d 483 (2d Cir. 2013)...................................................25

*Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*,
83 F.4th 658 (8th Cir. 2023)...............................................15, 17

vi

*Pleasant Grove City, Utah v. Summum*,
    555 U.S. 460 (2009)……………………………………………………………....13

*Q"-Lungian Enters., Inc. v. Town of Windsor Locks*,
    272 F. Supp. 3d 289 (D. Conn. 2017)………………………………………………16

*Rosenberger v. Rector & Visitors of Univ. of Virginia*,
    515 U.S. 819 (1995)……………………………………………………..…13, 14

*Salazar v. King*,
    822 F.3d 61 (2d Cir. 2016)…………………………………………………10, 13

*Saraceni v. M&T Bank Corp.,*
    No. 19-CV-1152, 2020 WL 435359 (W.D.N.Y. Jan. 28, 2020)…………………………...23

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)………………………………………………………………7

*T–Mobile Ne. LLC v. Water Auth. of W. Nassau Cnty.,*
    249 F. Supp. 3d 680 (E.D.N.Y. 2017)………………………………………………23

*Tom Doherty Assocs., Inc. v. Saban Ent. Inc.*,
    60 F.3d 27 (2d Cir. 1995)………………………………………………………...22

*Tough Traveler, Ltd. v. Outbound Products*,
    60 F.3d 964 (2d Cir. 1995)……………………………………………………..…23

*Turner Broad. Sys., Inc. v. F.C.C.*,
    512 U.S. 622 (1994)……………………………………………………………...20

*United States v. Nat'l Dairy Prods. Corp*.,
    372 U.S. 29 (1963)………………………………………………………………19

*United States v. Hansen*,
    599 U.S. 762 (2023)……………………………………………………….....19

*United States v. Williams*,
    553 U.S. 285 (2008)……………………………………………………....…19

*Variscite NY Four, LLC v. New York State Cannabis Control Bd.,*
    No. 1:23-CV-01599 (AMN/CFH), 2024 WL 406490 (N.D.N.Y. Feb. 2, 2024)………….22

*Vermont Right to Life Comm., Inc. v. Sorrell*,
    221 F.3d 376 (2d Cir. 2000)………………………………………………….…7, 10

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982)…………………………………………………………………...19

*Virginia v. Am. Booksellers Ass'n*,
   484 U.S. 383 (1988)………………………………………………………………7, 10

*Virgina v. Hicks*,
   539 U.S. 113 (2003)…………………………………………………………………...19

*Walden v. Kosinski*,
   153 F.4th 118 (2d Cir. 2025)………………………………………………………...10

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*,
   576 U.S. 200 (2015)…………………………………………………………………...13

*Wandering Dago, Inc. v. Destito*,
   879 F.3d 20 (2d Cir. 2018)…………………………………………………………15

*Wandering Dago Inc. v. New York State Off. of Gen. Servs.*,
   No. 1:13-CV-1053 (MAD/RFT), 2013 WL 12131305 (N.D.N.Y. Nov. 8, 2013)…………23

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
   423 F.3d 137 (2d Cir. 2005)………………………………………………………...23

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)……………………………………………………………………….5

*Women for Am. First v. Adams*,
   No. 21-485-CV, 2022 WL 1714896 (2d Cir. May 27, 2022)……………………………13

*Yang v. Kosinski*,
   960 F.3d 119 (2d Cir. 2020)…………………………………………………………...25

**Federal Statutes**

Fed. R. Civ. P. 12(b)(6)…………………………………………………………………4, 6

**State Statutes**

N.Y. Educ. Law § 11(7)…………………………………………………………………20

N.Y. Educ. Law § 12……………………………………………………………………...10

N.Y. Educ. Law § 306…………………………………………………………………...10, 12

N.Y. Educ. Law § 310…………………………………………………………………12

N.Y. Exec. Law § 296(4)………………………………………………………………10

N.Y. State Admin. Proc. Act § 102(2)(b)(iv)………………………………………...14

N.Y. Comp. Codes R. & Reg. tit. 8, § 275…………………………………………………12

N.Y. Comp. Codes R. & Reg. tit. 8, § 277……………………………………...12

**Miscellaneous Authorities**

*Application of T.L.*,
        64 Ed. Dep't Rep., Decision No. 18474 (Aug. 19, 2024), 2024 WL 4039758……………12

Defendants, New York State Attorney General Letitia James; New York State Department of Education ("NYSED") Commissioner Betty Rosa; Lester W. Young, Jr., in his official capacity as Chancellor of the New York State Board of Regents; Judith Chin, in her official capacity as Vice Chancellor of the New York State Board of Regents, and Roger Tilles, Christine Cea, Wade Norwood, Susan Mittler, Frances Wills, Aramina Vega Ferrer, Shino Tanikawa, Roger Catania, Adrian Hale, Hasoni Pratts, Patrick Mannion, Seema Rivera, Brian Krist, Keith Wiley, and Felica Thomas-Williams, in their official capacities as members of the New York State Board of Regents, submit this memorandum of law, along with the Declarations of Daniel Morton-Bentley, Esq. ("NYSED Decl.") and Rachel Finn, Esq. ("OAG Decl."), in opposition to Plaintiffs' motion for a preliminary injunction (ECF No. 12), and in support of Defendants' cross-motion to dismiss the complaint, ECF No. 1.

## PRELIMINARY STATEMENT

On May 8, 2025, Defendants Attorney General Letitia James and Commissioner Betty Rosa issued a Joint Guidance letter on "Harassment and Bullying in School Board Meetings" (hereinafter "the Guidance Letter"). *See* ECF No. 1-1 at 44-52. Defendants issued the Guidance Letter to represent the Office of the Attorney General ("OAG") and NYSED's interpretation of State law. It (1) discusses school board members' duty to ensure that board meetings are conducted in a manner that respects the dignity and rights of all students; (2) provides resources to assist school board members in sustaining safe and supportive school environments; and (3) reminds school board members that under New York State law, they may be subject to applications for removal from office if they willfully neglect their duty or violate legal protections for students in their districts. *Id*. at 45-46; *see also* NYSED Decl. ¶¶ 6, 8. The Guidance Letter explicitly states that the legal protections discussed therein apply equally to all other protected statuses, including

1

race, sex, religion, nation origin, immigration status, and disability. ECF No. 1-1 at 46.

The Guidance Letter was just that—guidance. The Guidance Letter does not change the law or expand the scope of OAG's and NYSED's regulatory authority. NYSED Decl. ¶ 6. And because it is neither an adjudication nor a rule adopted following notice-and-comment rulemaking, the Guidance Letter does not have the force of law. *Id*. In fact, Plaintiffs have not stopped speaking because of it. Yet, Plaintiffs claim irreparable harm seven months after receiving the letter based on hypothetical injuries they have not pleaded. Plaintiffs' complaint should be dismissed because (1) Plaintiffs lack standing because they fail to plausibly allege a credible threat of enforcement that is fairly traceable to the Guidance Letter—even pleading that the Guidance Letter has not deterred them from freely expressing their views; and (2) Plaintiffs have not adequately pleaded First Amendment claims because they have not alleged any restriction on Plaintiffs' speech; their vagueness and overbreadth claims do not apply to the government speech in the Guidance Letter; and the Guidance Letter does not attempt to compel the utterance of a particular message favored by the Government. Additionally, Plaintiffs have not justified their preliminary injunction motion by showing irreparable harm, and the equities favor Defendants because Plaintiffs' claims fail as a matter of law.

## STATEMENT OF FACTS

On May 8, 2025, Attorney General James and Commissioner Rosa published a "Dear Colleague" Guidance Letter and emailed it to local boards of education on May 15, 2025. The Guidance Letter was issued to remind New York State school board members that while school boards can elect to receive public comments during their meetings and they may address controversial topics during those meetings, boards of education have an obligation to adhere to state laws and regulations that safeguard students from harassment, bullying, and the disclosure of

protected student information. ECF No. 1-1 at 45. To provide this information, the Guidance Letter was organized into three sections. The first section discussed board members' duty to ensure that board meetings are conducted in a manner that respects the dignity and rights of *all* students. To that end, the Guidance Letter provided resources published by the OAG and NYSED to assist board members in promoting and sustaining a supportive and safe learning environment for LGBTQ+ students, which demonstrates that the purpose of the Guidance Letter was informational, not punitive. *Id*. at 48, 51.

The second section discussed legal protections that could be violated if a school board permits or creates a hostile learning environment for transgender and LGBTQ+ students. *Id*. at 48-49. Specifically, the Guidance Letter reminds school board members of the protections afforded to all students under the New York State Constitution and New York Civil Rights Law with respect to all students' right to an education without discrimination based on sex, sexual orientation, gender identity or gender expression. *Id*. It further cautioned school boards regarding state law provisions and common law duties that prohibit a failure to act, including under circumstances where school boards permit harassment of students based on their sex, sexual orientation, gender identity or gender expression. *Id*. at 49.

Finally, the third section reminds school board members that existing New York State law subjects them to applications for removal from office if they willfully neglect their duty or violate legal protections for students. *Id*. at 49-52. Notably, the Guidance Letter explicitly states that the legal protections discussed within apply with equal force to all protected classes. *Id*. at 46.

School board and community members in New York have continued to express a variety of perspectives on transgender students' rights at school board meetings in the months following the Guidance Letter. And on September 9, 2025, four months after the Guidance Letter, the

Massapequa Union Free School District's Board of Education—with Plaintiff Wachter's support—passed a resolution prohibiting transgender students from using restrooms that align with their gender identity. *See* OAG Decl. ¶¶ 4, 7, 8. Seven months after the Guidance Letter, Plaintiffs filed a complaint on December 9, 2025 alleging that Defendants violated their constitutional rights pursuant to the First and Fourteenth Amendments because the Guidance Letter constitutes a viewpoint-based restriction; the Guidance Letter is vague and overbroad, thus prohibiting protected speech; and the Guidance Letter compels the Plaintiffs' speech in a manner that violates the First Amendment. *See generally* ECF No. 1. Plaintiffs subsequently filed a motion for preliminary injunctive relief, seeking to "enjoin defendants from enforcing the [Guidance] Letter." *See generally* ECF No. 12. As fully discussed below, Plaintiffs' motion for a preliminary injunction should be denied, and Defendants' cross-motion to dismiss should be granted, dismissing Plaintiffs' complaint in its entirety, with prejudice.

## STANDARD OF REVIEW

**Fed. R. Civ. P. 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." *Jackson v. Onondaga County*, 549 F. Supp. 2d 204, 211 (N.D.N.Y. 2008); Fed. R. Civ. P. 12(b)(6). When addressing a motion to dismiss, "the Court accepts as true all of the factual allegations in the complaint and draws inferences from those allegations in the light most favorable to the plaintiff." *Jaufman v. Levine*, 2007 WL 2891987, at *5 (N.D.N.Y. 2007) (citing *Albright v. Oliver,* 510 U.S. 266, 268 (1994)). This presumption of truth, however, does not extend to legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In order "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). Ultimately, where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

**Preliminary Injunction**

"A preliminary injunction is an 'extraordinary and drastic remedy'...; it is never awarded as of right ...." *Bronx Harbor Health Care Complex, Inc. v. McDonald*, No. 1:24-CV-1573 (GTS/PJE), 2025 WL 3761723, at *2 (N.D.N.Y. Dec. 30, 2025) (citing *Munaf v. Geren,* 553 U.S. 674, 689-90 (2008) (internal citations omitted)). A party seeking a preliminary injunction must demonstrate the following three elements: "(1) that there is either (a) a likelihood of success on the merits and a balance of equities tipping in the party's favor or (b) a sufficiently serious question as to the merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in the party's favor; (2) that the party will likely experience irreparable harm if the preliminary injunction is not issued; and (3) that the public interest would not be disserved by the relief." *Id*., citing *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).

Significantly, a heightened standard–requiring both a "clear or substantial" likelihood of success and a "strong" showing of irreparable harm"–is required under the following circumstances: "when the requested injunction (1) would provide the movant with all the relief that is sought and (2) could not be undone by a judgment favorable to non-movant on the merits at trial." *Id.*, citing *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,

598 F.3d 30, 35, n.4 (2d Cir. 2010) (citation omitted); *New York v. Actavis PLC,* 787 F.3d 638, 650 (2d Cir. 2015). This heightened standard may also be required when the preliminary injunction is "mandatory" in that it would "alter the status quo by commanding some positive act," as opposed to being "prohibitory" by seeking only to maintain the *status quo*. *Id.*, citing *Citigroup Global Markets, Inc.,* 598 F.3d at 35, n.4 (citation omitted).

Here, the heightened standard described above must be applied because an injunction will provide Plaintiffs with substantially all the relief that is sought in their complaint. To be sure, Plaintiffs' complaint requests a permanent injunction preventing Defendants from "enforcing" the Guidance Letter. Plaintiffs seek a preliminary injunction requesting the same relief. Accordingly, Plaintiffs must therefore show a "clear" or "substantial" likelihood of success on the merits and make a "strong showing" of irreparable harm, in addition to showing that the preliminary injunction is in the public interest. *Actavis*, 787 F.3d at 650.

Plaintiffs cannot meet the rigorous heightened injunctive relief standard. First, Plaintiffs have not demonstrated a likelihood of success on the merits. For the same reasons, Defendants' cross-motion to dismiss should be granted pursuant to Fed. R. Civ. P. 12(b)(6). Second, Plaintiffs fail to demonstrate that they will suffer irreparable harm in the absence of a preliminary injunction. Finally, the equities and the public interest weigh against granting a preliminary injunction.

## ARGUMENT

### POINT I:    PLAINTIFFS LACK STANDING

Plaintiffs lack standing because their purported injury is purely speculative and hypothetical, not "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). To establish standing to bring a First Amendment challenge, Plaintiffs would have needed to plead either that their speech has been chilled or that they have "suffered some other concrete

harm," such as enforcement of the Guidance Letter. *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). But where, as here, Plaintiffs allege only a fear of future harm, their failure to "proffer some objective evidence…that the challenged conduct has deterred them from engaging in protected activity" is fatal to their pre-enforcement standing, requiring dismissal of their complaint. *Guan v. Mayorkas*, 530 F. Supp. 3d 237, 258 (E.D.N.Y. 2021) (internal quotations and alterations omitted) (quoting *Nitke v. Ashcroft*, 253 F. Supp. 2d 587, 596 (S.D.N.Y. 2003) (quoting *Bordell v. Gen. Elec. Co.*, 922 F.2d 1057, 1061 (2d Cir. 1991)).

Plaintiffs do not claim that the Guidance Letter has chilled their speech. But even if they had, their allegations would still be insufficient for pre-enforcement standing. To allege a justiciable injury in this posture, a plaintiff must demonstrate "an intention to engage in a course of conduct arguably affected with a constitutional interest," that the "conduct is 'arguably proscribed by' the challenged regulation," and "there exists a credible threat of prosecution" under the regulation that is "sufficiently imminent." *Cerame v. Slack*, 123 F.4th 72, 81 (2d Cir. 2024) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 162 (2014)). Here, however, Plaintiffs do not allege that Defendants or anyone else has threatened to enforce the Guidance Letter against them. And even if such a threat had been made, it would not be credible because the Guidance Letter is informal guidance that lacks the force of law. Article III requires more.

### A.  Plaintiffs expressly state that their speech will not be chilled.

Plaintiffs do not allege that the Guidance Letter has in any way chilled their speech. This is fatal, as Article III requires Plaintiffs to show an actual or threatened injury as a result of Defendants' conduct. In this context, when the threat of civil or criminal penalties deters a plaintiff from engaging in protected speech, courts have recognized that "self-censorship" is itself "a harm that can be realized even without an actual prosecution." *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000) (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383,

393 (1988)). Here, however, Plaintiffs repeatedly avow that they will continue to engage in the types of speech the letter addresses. And since Plaintiffs do not claim that they have suffered any "other concrete harm" because of the Guidance Letter, *Dorsett*, 732 F.3d at 160, they do not identify any harm they have suffered, let alone an injury that is sufficiently "concrete, particularized, and actual or imminent" to establish Article III standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation marks and citations omitted).

Plaintiffs' sole claim of injury appears to be their "fear" of future "legal action" or other repercussions for their speech. ECF No. 1 ¶¶ 103–04, 122–23, 134–35, 145–46. However, "[f]or fear to suffice as a concrete and immediate harm constituting a present injury to Plaintiffs' First Amendment rights," Plaintiffs were required to proffer some evidence that the Guidance Letter "deterred" them from continuing to express their views. *Guan*, 530 F. Supp. 3d at 258 (citations, internal quotation marks, and alterations omitted). This they have failed to do. Far from alleging that the guidance letter has chilled their speech, Plaintiffs expressly—and repeatedly—state that they "intend[] to continue" to speak freely on "gender identity and transgender issues" during school board meetings. ECF No. 1 ¶¶ 98–99, 18, 134–35, 145–46, 185. The Board Member Plaintiffs further vow that they "intend[] to continue allowing parents and community members" to do the same. *Id.* ¶¶ 96–97, 116–17. In other words, Plaintiffs are clear that they will not allow the Guidance Letter to inflict the only type of harm for which they might have established pre-enforcement standing.

Indeed, Plaintiffs allege that they have continued to speak their minds at board meetings in the months since the Guidance Letter was issued without any negative repercussions. In those months, for instance, Wachter alleged that she championed a Massapequa Board of Education resolution prohibiting transgender students from using restrooms that align with their gender

identity. *Id*. ¶ 101–02. Although she does not plead its date, the Court can take judicial notice that at least one of these resolutions was adopted months after the Guidance Letter was issued. *See* OAG Decl. ¶¶ 5, 9.

The Second Circuit has declined to find pre-enforcement standing under circumstances like these. In *Bordell v. General Electric Co.*, the court rejected a pre-enforcement challenge to a policy requiring employees to avoid publicly commenting on the program's work. 922 F.2d at 1058–61. Noting that the plaintiff had continued making public statements about the program without punishment, the court found his claim that "he has felt and continues to feel that he is subject to possible prosecution" insufficient to "meet the minimum constitutional requirements for standing." *Id.* at 1060–61. Following this precedent, a district court similarly found that a plaintiff failed to establish standing because she had "chosen to speak," even though she delayed engaging in the speech at issue "for three years because of her fear of prosecution." *Nitke*, 253 F. Supp. 2d at 597. As the court explained, "[t]he essence of a claim of chill is an assertion that one has elected to refrain from speaking." *Id.* Plaintiffs have not refrained from speaking and, as a result, have suffered no injury. Having failed to allege an injury-in-fact, Plaintiffs cannot establish standing, and their complaint must be dismissed.

**B. Plaintiffs have not plausibly alleged a credible threat of enforcement that is fairly traceable to the Guidance Letter.**

Plaintiffs' fears of some possible future harm are likewise insufficient to establish standing. In pre-enforcement First Amendment challenges like Plaintiffs,' "the standing inquiry ultimately boils down to whether there is a credible threat of enforcement against a plaintiff." *Cerame*, 123 F.4th at 81 n.12. This "threatened injury must be *certainly impending* to constitute injury in fact"; "[a]llegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (quotation marks and citations omitted). Plaintiffs fail to satisfy even this "somewhat relaxed" standard

9

because they have not alleged a credible threat that the Guidance Letter will be enforced against them. *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013).

Plaintiffs cannot make this showing for the simple reason that the Guidance Letter is unenforceable. The letter expresses Defendants' views and their interpretation of state laws. It directs no course of action and threatens no consequences. Any legal consequence Plaintiffs could conceivably face would require additional, hypothetical actions beyond the letter, which is merely informal guidance. *See, e.g.*, *Salazar v. King*, 822 F.3d 61, 65 (2d Cir. 2016) ("dear colleague" letters are "informal agency guidance"). Any fear that this type of guidance could be enforced against Plaintiffs or anyone else is neither "actual" nor "well-founded." *Vermont Right to Life Comm.*, 221 F.3d at 382 (quoting *Am. Booksellers Ass'n*, 484 U.S. at 393).

Indeed, the Guidance Letter and the laws it cites do not apply to the Parent Plaintiffs at all. By its terms, the letter is addressed exclusively to school board members. Parent Plaintiffs are third parties who are not subject to any of the independent legal constraints and administrative procedures discussed in the letter. *See, e.g.*, N.Y. Exec. Law § 296(4) (prohibiting "educational institution[s]" from permitting harassment based on a protected status); N.Y. Educ. Law § 12 ("No student shall be subjected to harassment or bullying by employees or students …"); N.Y. Educ. Law § 306 (authorizing the Commissioner of Education to remove "school officers" for specific types of misconduct).

Nor have Parent Plaintiffs alleged a concrete injury traceable to the "determinative or coercive effect" of the Guidance Letter on a third party, such as a board of education. *Cf. Walden v. Kosinski*, 153 F.4th 118, 131 (2d Cir. 2025) (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)). The Parent Plaintiffs do not claim that a school board has *ever* restricted their speech or caused them to suffer any other concrete injury because of the Guidance Letter or for any other reason. In

fact, the sole injury the Parent Plaintiffs allege is their speculative "fear" that a school board might someday "verbally reprimand [them], deem [them] out-of-order, and/or stop [them] from speaking and, in doing so, …publicly brand [them] as harassing and bullying children." ECF No. 1 ¶¶ 134, 135, 145, 146. The Supreme Court has refused "to endorse standing theories that rest on speculation about the decisions of independent actors," finding that this type of "hypothetical future harm," based on a "speculative chain of possibilities," is insufficient to establish standing. *Clapper*, 568 U.S. at 402, 414.

The Board Member Plaintiffs likewise fail to allege an injury that is "certainly impending" or fairly traceable to the Guidance Letter. *Id.* at 409 (emphasis removed). Both Board Member Plaintiffs allege that the letter has caused them to "fear[] legal action by local activists" and Defendants and applications for their removal by unidentified third parties. ECF No. 1 ¶¶ 3, 84, 103–04, 122–23. However, a "theory of *future* injury is too speculative to satisfy the well-established requirement that threatened injury must be certainly impending," not least of all because the Board Member Plaintiffs have freely continued to express their views without any of the repercussions they claim to fear. *Clapper*, 568 U.S. at 401, 410 (citation and quotation marks omitted). Wachter, for instance, alleges that the "Guidance Letter's threats against [her] are heightened because she has supported Massapequa resolutions which require students to use sex-separated school bathroom facilities which correspond to students' sex or single-person facilities that can be used privately by both sexes." ECF No. 1 ¶ 102. In fact, the opposite is true. At least one such resolution was openly debated and passed with Wachter's support on September 9, 2025, over four months after Defendants issued the Guidance Letter. Yet Wachter does not allege that Defendants or anybody else has relied on the letter to seek her removal from office or bring any other kind of "legal action" against her for her speech.

For her part, Ciampino alleges that the "Guidance Letter's threats against [her] are heightened because, before issuance of the Letter, a local activist attempted to remove her colleague based on an alleged statement related to LGBTQ+ student organizations." ECF No. 1 ¶ 121. However, that proceeding—which concluded over a year before the instant lawsuit—was based on provisions of the New York State Education Law and its implementing regulations. *See Application of T.L.*, 64 Ed. Dep't Rep., Decision No. 18474 (Aug. 19, 2024), 2024 WL 4039758; N.Y. Educ. Law §§ 306 (removal of school officers), 310 (appeals or petitions to Commissioner of Education); N.Y. Comp. Codes R. & Reg. tit. 8, §§ 275, 277. Any fear that removal proceeding may have aroused in Ciampino is not fairly traceable to the Guidance Letter, which Ciampino concedes had not been issued when the proceeding in question took place. Should an aggrieved party ever seek Ciampino's removal from office, that party would need to rely on the same laws and regulations on which the application to remove Ciampino's colleague relied, not on agency guidance that offers information about those laws and regulations.

Plaintiffs' fears that some "hypothetical future harm" might stem from the application of *other* laws and regulations are insufficient to establish a justiciable injury-in-fact. *Clapper*, 568 U.S. at 402; *see Bordell*, 922 F.2d at 1060–61. Plaintiffs may resent being "remind[ed]" of school boards' "obligations to adhere to state laws and regulations." ECF No. 1-1 at 2. They may disagree with the Guidance Letter's interpretation of those laws and regulations, and they have continued to disregard Defendants' words of caution without any repercussions that are discernable from their pleadings. But fear or disagreement alone is insufficient to establish standing. And without standing, Plaintiffs' complaint must be dismissed.

**POINT II:    PLAINTIFFS FAIL TO ESTABLISH A CLEAR OR SUBSTANTIAL LIKELIHOOD THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FIRST AMENDMENT CLAIM**

**A.  Plaintiffs cannot show a likelihood of succeeding on their First Amendment viewpoint**

**discrimination claim because they have not alleged a restriction on Plaintiffs' speech.**

1. <u>The only government action at issue is permissible government speech.</u>

As the Supreme Court has held, "the Free Speech clause has no application" to government speech like the Guidance Letter. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467–68 (2009); *see also Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015); *Women for Am. First v. Adams*, No. 21-485-CV, 2022 WL 1714896, at \*2 (2d Cir. May 27, 2022). NYSED and OAG regularly issue joint guidance on issues of importance to the State's schools, all with much the same purpose: to communicate their position on those issues, share their interpretations of relevant laws, and provide informal guidance and resources to relevant stakeholders. NYSED Decl. ¶ 7. Courts have repeatedly ruled that these kinds of documents are interpretive statements without the force or effect of law. *See, e.g.*, *Salazar*, 822 F.3d at 65 ("dear colleague" letters are "informal agency guidance"); *Hill v. Delaware N. Companies Sportservice, Inc.*, 838 F.3d 281, 290 (2d Cir. 2016) (guidance is intended to "inform the public of the agency's construction of the statutes it administers" and does not have force of law); *New York Coal. for Quality Assisted Living, Inc. v. Novello*, 53 A.D.3d 914, 916 (2008) (guidance letter is "an interpretive statement that is merely explanatory").

Plaintiffs' conclusory allegations of "viewpoint discrimination" and speech "suppression" commingle multiple legal theories without providing a plain statement of their causes of action. But under any theory, their claims fail. Viewpoint discrimination occurs when the government "regulate[s] speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 828 (1995); *see also Fellers v. Kelley*, No. 24-CV-311 (SM) (AJ), 2025 WL 1098271, at \*9–10 (D.N.H. Apr. 14, 2025). But no such non-neutral regulation is at issue here. The Guidance Letter is not a statute. It is not agency action or

policy—which, in New York, has the force of law only after "consummation of the administrative process." *Essex Cnty. v. Zagata*, 91 N.Y.2d 447, 453 (1998); *see also Best Payphones, Inc. v. Dep't of Info. Tech. & Telecomms. of City of N. Y.*, 5 N.Y.3d 30, 34 (2005) (agency action only justiciable when it becomes "final and binding"); N.Y. State Admin. Proc. Act § 102(2)(b)(iv) ("interpretive statements and statements of general policy. . . have no legal effect but are merely explanatory").[1]

Plaintiffs make theoretical allegations that the letter "require[s] school board members across New York to self-censor," "forbids" certain speech, and "threatens legal sanctions" for "speech and advocacy." ECF No. 1 ¶¶ 3, 7, 36. But they never explain how this speech is purportedly suppressed given the absence of an enforceable regulation. *Cf. id.* ¶¶ 25 (NYC public schools restricted speech through an enacted regulation, "Regulation D-210"); 26 (Iowa school district "adopted" "Administrative Regulations"). Nor can they: the guidance is a non-binding opinion letter. It is not a cease-and-desist letter. It creates no new legal obligations. As Plaintiffs themselves make clear, their "obligations" before and after the Guidance Letter are the same: to "adhere to state laws and regulations." *See* ECF No. 1 ¶ 38; ECF No. 12-1 at 7–8. The letter says precisely that.

And Plaintiffs cite no legal authority for their apparent proposition that interpretive agency guidance, without more, is a regulation that can form the basis for a First Amendment claim. Rather, they look to inapposite cases concerning targeted government restrictions or formally enacted, enforceable policies. These have no bearing on the case here. For example, the plaintiff in *Rosenberger v. Rector & Visitors of the Univ. of Va.* sued after a public university denied funding to its group. 515 U.S. 819, 827 (1995). In *Collins v. Putt*, the plaintiff sued after a teacher removed

---

[1] Plaintiffs' allegation that one school board across the state "considers" such guidance "binding" is of no moment. *See* ECF No. 1 ¶¶ 137, 148. Whether a school board chooses to follow agency guidance does not alter its lack of binding legal effect.

his blog post from a classroom website. 979 F.3d 128, 139 (2d Cir. 2020).[2] In *Wandering Dago, Inc. v. Destito*, the plaintiff sued after defendant denied its application for a vendor permit due to its branding. 879 F.3d 20 (2d Cir. 2018).

The out-of-circuit cases on which Plaintiffs primarily rely are similarly inapposite. Each concerns government regulation in the form of binding actions not alleged here. *See Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.,* 158 F.4th 732, 739 (6th Cir. 2025) (challenged enforceable school district policy); *Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.,* 83 F.4th 658, 663–64 (8th Cir. 2023) (challenged enforceable administrative regulations school district formally adopted); *Meriwether v. Hartop,* 992 F.3d 492, 502 (6th Cir. 2021) (challenged a disciplinary action against plaintiff); *Moms for Liberty - Brevard Cnty., FL v. Brevard Pub. Schs.*, 118 F.4th 1324, 1328, n.1 (11th Cir. 2024) (challenged policies school board "enacted" as bylaws); *Ison v. Madison Loc. Sch. Dist. Bd. of Educ*., 3 F.4th 887, 893 (6th Cir. 2021) (challenged Public Participation Policy the school board "enacted"). Contrary to Plaintiffs' erroneous comparisons to the foregoing case law, the 'action' at issue here is not at all similar to one that "bar[]s speakers from referring to transgender and nonbinary persons using the pronouns that match their biological sex." ECF No. 12-1 at 19 (citing *Olentangy*, 158 F.4th at 738, 755). Rather, it is informal agency guidance explaining that certain conduct "may" expose districts to liability under the law. ECF No. 1 ¶ 67; *see also* ¶ 68 (certain conduct "may" well be sufficient for liability under state human rights law); *cf. Parents Defending Educ.,* 83 F.4th at 664 (text of adopted policy established that student who violates the policy "shall be disciplined"); *Meriwether,* 992 F.3d at 498 (prior to actions at issue in the case, university confirmed that a professor who violates speech policy "would be

---

[2] Plaintiffs' cites are only to the concurrence, which notes that it diverges in its First Amendment analysis from the opinion. *See* ECF No. 12-1 at 17.

disciplined"). Plaintiffs' request that the Court enjoin this Guidance Letter asks for extraordinary and unprecedented relief that would deter government agencies from providing legal interpretations to regulated entities.

    2.  Plaintiffs do not allege any other basis for a viewpoint discrimination claim.

Not only is there no government regulation at issue, but Plaintiffs have alleged no other theory on which a viewpoint discrimination claim might be stated. For instance, speculative allegations of speech "suppression" do not state a claim for a prior restraint on speech. A prior restraint entails "any law requiring would-be speakers to seek government approval before speaking." *"Q"-Lungian Enters., Inc. v. Town of Windsor Locks*, 272 F. Supp. 3d 289, 297 (D. Conn. 2017). The Guidance Letter is not one of "the two traditional types of prior restraint: (1) preventing the printed publication of disfavored information, [or] (2) a facially-neutral law that sets up an administrative apparatus with the power and discretion to weed out disfavored expression before it occurs." *Massapequa Union Free Sch. Dist. v. NYS Bd. of Regents*, No. 23-CV-7052-SJB-LGD, 2025 WL 3182580, at *18, n.17 (E.D.N.Y. Nov. 14, 2025) (cleaned up).

Neither type of restraint is alleged here. As described above, Plaintiffs do not allege that the letter is a law (type two). Plaintiffs also do not allege that the letter prohibited any purportedly disfavored speech (type one). *Cf. Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67–68 (1963) (administrative restraint only when government both "deliberately set about" to suppress speech and "succeeded in its aim.").

The absence of such allegations condemns Plaintiffs' reliance on out-of-circuit cases in which governments allegedly suppressed speech. *See Meriwether,* 992 F.3d at 502 (defendants disciplined plaintiff, and rejected his appeal of that decision); *Ison*, 3 F.4th at 891 (defendants "twice prevented [plaintiffs] from speaking for failing to comply with its Public Participation

Policy"); *Olentangy,* 158 F.4th at 739 (a school district admitted it would prohibit certain speech, requiring children to "self-censor" or face punishment); *Moms for Liberty - Brevard Cnty., FL,* 118 F.4th at 1330 (board had "interrupt[ed] and berate[d] speakers…for violating the policies" causing plaintiffs to "self-censor[]"); *Parents Defending Educ.,* 83 F.4th at 663–64 (school district adopted policy forcing children to "remain silent"). By contrast, Plaintiffs have not pled any example of Defendants taking any action to preemptively silence or censure speech—and Plaintiffs have kept speaking.

Nor have Plaintiffs alleged—or argued—the type of third-party coercion required to transform lawful government speech into a First Amendment violation. *See, e.g., Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 (2024) (holding that allegations of government "threats or… inducement[s]" to third parties can constitute unlawful First Amendment coercion); *see also Bantam Books*, 372 U.S. at 63, 72 (bookseller stopped circulation of books after visits from police officers). The sole action Plaintiffs ascribe to Defendants here is publishing and emailing the Guidance Letter to school boards. *See* ECF No. 1 ¶¶ 37, 38. Plaintiffs even admit that they have *not* faced "threats from the State." *See id.* ¶ 32. Coupled with their failure to allege a chill, the absence of allegations of coercion would doom such a claim.

3.  School board members and parents, including Plaintiff Wachter, have continued expressing a range of perspectives regarding transgender students' rights in schools with no legal sanction.

Plaintiffs' inadequate pleading warrants dismissal of this case. In addition, evidence of school board activities since the Guidance Letter demonstrates that Plaintiffs are unlikely to succeed on the merits of their claims, providing a further basis on which to deny their motion for a Preliminary Injunction.

Far from allegations that the letter "directly and designedly stopped" purportedly disfavored speech, *Bantam Books*, 372 U.S. at 67–68, Plaintiffs affirm throughout the complaint

that they "intend[] to continue" precisely the conduct they falsely claim is restricted. *See* ECF No. 1 ¶¶ 96, 97, 98, 99, 116, 117, 118, 134, 135, 145, 146, 185; *supra* Point I(A). Where a plaintiff alleges no change in behavior, as here, that plaintiff "has quite plainly shown no chilling of [the] First Amendment right to free speech." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). And public record demonstrates that, as alleged, parents and school board members have in fact continued to speak their opinions regarding transgender students' rights in school with no retribution in the months following the Guidance Letter.

Four months after the May 2025 Guidance Letter, Massapequa Union Free School District's Board of Education unanimously passed a resolution mandating students use restroom and locker facilities corresponding to their "biological classification as either male or female." *See* OAG Decl. ¶ 5. And at least six school board meetings in the Massapequa school district since the May 2025 guidance letter have hosted speech across the spectrum of the public debate regarding the rights of transgender students. *See id*. ¶ 7. At four of these board meetings, Plaintiff Wachter personally spoke on transgender students' rights in school, including about her support for the September resolution, and moderated public comments expressing various perspectives. *See id.* ¶ 8. Plaintiffs have alleged no legal action against them, whether based on the Guidance Letter or otherwise, following these board meetings. And in fact, Defendants have not taken action against Plaintiffs, board members, or anyone who spoke at these meetings in response to their speech. *Id.* ¶ 10. Thus, Plaintiffs are not likely to be able to demonstrate that they subjectively fear retribution for their speech and advocacy.

## B. Plaintiffs cannot show a likelihood of succeeding on their vagueness and overbreadth claim.

Plaintiffs' vagueness and overbreadth claims fail at the outset because neither doctrine applies to the government speech in the Guidance Letter. Under the vagueness doctrine, a law fails

due process if it does not "provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). The related First Amendment overbreadth doctrine provides that "a statute is facially invalid if it prohibits a substantial amount of protected speech." *Id.* at 292. Neither protection is relevant to the unenforceable Guidance Letter, an advisory letter that does not and *could* not prohibit speech, protected or otherwise. Plaintiffs may believe that Defendants' legal guidance is unclear or ill-conceived. But even if true, those alleged shortcomings would not implicate due process or the First Amendment claims, let alone establish a likelihood of success on their merits.

Applying vagueness and overbreadth analysis to this type of government speech would mark an unprecedented expansion of those doctrines. *See United States v. Hansen*, 599 U.S. 762, 770 (2023) ("To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful …"). Even assuming that the Guidance Letter reflects a "policy," the Supreme Court has been clear that those doctrines apply to laws, not policies—and, even then, must be applied sparingly to protect against the most egregious threats to personal liberty. *See Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973) (overbreadth doctrine is "strong medicine" to be employed "only as a last resort"); *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963) ("[S]tatutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language."). Further, the Supreme Court has cautioned that civil laws must be treated with "greater tolerance … because the consequences of [statutory] imprecision are qualitatively less severe." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982) (discussing vagueness); *see Virgina v. Hicks*, 539 U.S. 113, 119 (2003) (overbreadth doctrine is most relevant when "overbroad statute

19

imposes criminal sanctions").

In any event, Plaintiffs' complaint that the Guidance Letter is vague and overbroad because it fails to define "harassment" and "bullying" rings hollow. *See* ECF No. 12-1 at 23-24. Those terms are defined in the New York Education Law, as Plaintiffs themselves acknowledge. *See id.* (citing the Dignity Act's definition of "harassment and bullying"); *see also* N.Y. Educ. Law § 11(7) (defining those terms). Plaintiffs urge this Court to disregard settled precedent and apply the vagueness and overbreadth doctrines to an advisory letter that claims no authority to prohibit or impose sanctions for speech or any other conduct. This Court should decline Plaintiffs' invitation to make new law and deny their request for injunctive relief.

### C. The School Board Plaintiffs cannot show a likelihood of succeeding on their compelled speech claim.

For many of the same reasons, Plaintiffs' compelled speech claim fares no better than their vagueness and overbreadth claims. The First Amendment right against compelled speech applies only when the application of a law "*actually compels* … expressive conduct" by punishing or threatening to punish protected speech. *Boehringer Ingelheim Pharms., Inc. v. U.S. Dep't of Health & Hum. Servs*., 150 F.4th 76, 95 (2d Cir. 2025) (citations and quotation marks omitted). However, the Guidance Letter is unenforceable guidance that cannot—and does not—attempt to compel "the utterance of a particular message favored by the Government." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 641 (1994). The compelled speech doctrine does not apply to this form of expressive government speech and should not be used to silence it. It therefore provides no basis for the preliminary injunction Plaintiffs seek.

Although Plaintiffs aver that the Guidance Letter "force[s]" them to "speak the State's message and silence speakers" with "contrary viewpoints," they do not identify any language in the letter that supports this misreading. ECF No. 12-1 at 25–27. Nor could they. The letter is clear

that, "[c]onsistent with the First Amendment, boards of education may prohibit all discussion from all viewpoints on a particular topic but may *not* prohibit only the expression of a particular viewpoint on that topic." ECF No.1-1 at 4 n.12. However, the Guidance Letter does not require school boards to impose even this form of content-neutral restriction. It requires nothing and can only offer guidance and resources to assist school boards in making their own decisions.

In fact, the only speech Plaintiffs allege to be compelled is the use of "non-biological pronouns to refer to a person identifying as transgender." ECF No. 12-1 at 26. But the Guidance Letter does not compel even that. It only expresses Defendants' research-based view that boards of education "should" not—not *must* not—"allow individuals to intentionally misgender district students" because misgendering has been shown to lead to "feelings of stigmatization and emotional harm, including anxiety, depression, and stress." ECF No. 1-1 at 4. Nowhere does the letter state that misgendering students without additional conduct violates the law.

Statements like this express Defendants' viewpoint, but that is very different from requiring others to do so. There is no question that a "government official can share her views freely and criticize particular beliefs, and she can do so forcefully in the hopes of persuading others to follow her lead." *Nat'l Rifle Ass'n*, 602 U.S. at 188. As Justice Scalia has explained, "It is the very business of government to favor and disfavor points of view…which is the main reason we have decided to elect those who run the government, rather than save money by making their posts hereditary." *Nat'l Endowment for the Arts v. Finley,* 524 U.S. 569, 598 (1998) (Scalia, J., concurring). Defendants have done nothing more than engage in this quintessential "business of government."

This is a far cry from the actual compulsion required for a compelled speech claim. *See Boehringer Ingelheim Pharms.,* 150 F.4th at 95. Plaintiffs are free to disagree with Defendants' views, and to continue to express and create a venue for views Defendants disfavor. Indeed, they

21

repeatedly state their intention of doing so (*see, e.g.*, ECF No. 12-1 at 11–12) ("All Plaintiffs intend to speak similarly in the future, and School Board Plaintiffs intend to permit parents and community members to do the same."). Simply put, because the Guidance Letter is unenforceable guidance, it cannot compel or proscribe speech. For this reason, this Court should dismiss Plaintiffs' compelled speech claim and deny their request for a preliminary injunction.

**POINT III:    PLAINTIFFS FAIL TO SHOW THEY WILL SUFFER IRREPARABLE HARM ABSENT THE DRASTIC RELIEF THEY SEEK**

Plaintiffs' unexplained delay in filing their motion for injunctive relief defeats any showing of irreparable harm at the outset. To be sure, Plaintiffs admittedly became aware of the May 8, 2025, Guidance Letter when it was issued. *See* ECF No. 12-2 ¶ 9; ECF No. 12-3 ¶ 12; ECF No. 12-4 ¶ 13; ECF No. 12-5 ¶ 13. Plaintiffs filed the federal complaint on December 9, 2025, and then waited a month later, eight months after receiving the Guidance Letter, to file the instant motion. *See* ECF No.12. School Board meetings have been scheduled—and held—on several occasions at Plaintiffs' respective school districts since the May 2025 Guidance Letter was issued. *See* OAG Decl. ¶¶ 4-8.

"[A] district court should generally consider delay in assessing irreparable harm." *Gov't Emps. Ins. Co. v. Strut*, 758 F. Supp. 3d 140, 145 (W.D.N.Y. 2024) (citing *Tom Doherty Assocs., Inc. v. Saban Ent. Inc.*, 60 F.3d 27, 39 (2d Cir. 1995)). In fact, Plaintiffs' unexplained delay alone is a sufficient basis to deny their motion. A "delay in bringing the action implies a lack of urgency, and thus, a lack of irreparable harm." *Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, No. 1:23-CV-01599 (AMN/CFH), 2024 WL 406490, at *10 (N.D.N.Y. Feb. 2, 2024), *vacated and remanded on other grounds*, 152 F.4th 47 (2d Cir. 2025) (citation omitted). Courts in this Circuit routinely decline to grant preliminary injunctions based on unexplained delays of more than only two months. *See Gov't Emps. Ins. Co.*, 758 F. Supp. 3d at 146 (citing *Tough Traveler,*

*Ltd. v. Outbound Products*, 60 F.3d 964, 968 (2d Cir. 1995)) (reversing the grant of a preliminary injunction where the plaintiff "waited at least nine months" to commence litigation, and then "waited some four months longer…before moving for a preliminary injunction"); *Saraceni v. M&T Bank Corp.,* No. 19-CV-1152, 2020 WL 435359, at *2 (W.D.N.Y. Jan. 28, 2020) ("courts in this Circuit typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months"); *Weight Watchers Int'l, Inc. v. Luigino's, Inc.,* 423 F.3d 137, 144 (2d Cir. 2005) (unexplained "delays of as little as ten weeks" defeat showing of irreparable harm); *Wandering Dago Inc. v. New York State Off. of Gen. Servs.,* No. 1:13-CV-1053 (MAD/RFT), 2013 WL 12131305, at *9 (N.D.N.Y. Nov. 8, 2013) (denying injunction where "Plaintiff waited over three (3) months to file this action and seek injunctive relief").

Plaintiffs' eight-month delay further demonstrates that the alleged irreparable harm is not "actual and imminent" but simply "remote and speculative." *Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.,* No. 1:21-CV-00038-MKV, 2021 WL 535485, at *7, fn. 6 (S.D.N.Y. Feb. 12, 2021) (citing *Monowise Ltd. Corp. v. Ozy Media, Inc*., No. 17-CV-8028 (JMF), 2018 WL 2089342, at *2 (S.D.N.Y. May 3, 2018) ("Wherever the line distinguishing between acceptable and unacceptable delay may be, [plaintiff's nine-month] delay plainly falls on the unacceptable side."); *T–Mobile Ne. LLC v. Water Auth. of W. Nassau Cnty.,* 249 F. Supp. 3d 680, 684 (E.D.N.Y. 2017) (seven-month delay indicated that alleged harm was not actual or imminent).

Further, at the preliminary injunction stage, "[b]ecause the deprivation of First Amendment rights is an irreparable harm, in First Amendment cases the likelihood of success on the merits is the dominant, if not the dispositive, factor." *Antonucci v. Winters*, 767 F. Supp. 3d 122, 138 (D. Vt. 2025) (citing *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020)) (quotation marks and citation omitted). Here, Plaintiffs contend that where a plaintiff demonstrates a First

Amendment injury, "irreparable harm necessarily follows." ECF No. 12-1 at 27. But as discussed under Point II, *supra*, Plaintiffs are not likely to succeed on the merits of their claims. Consequently, Plaintiffs have not demonstrated irreparable harm on this basis.

Plaintiffs further contend that the mere "threat" of irreparable harm is sufficient to demonstrate the irreparable harm prong of the preliminary injunction analysis. ECF No. 12-1 at 27. They contend that the "credible threat of enforcement of the [Guidance] Letter" establishes a constitutional injury. But again, Plaintiffs have not demonstrated such a "threat" exists, as discussed above under Point I, *supra*. Namely, Plaintiffs fail to demonstrate that they will be imminently and irreparably harmed by "enforcement" of the Guidance Letter because the Guidance Letter is simply guidance that does not change the law or expand the scope of OAG's and NYSED's regulatory authority. It does not have the force of law. (In fact, it does not apply to the parent Plaintiffs at all). For these reasons, Plaintiffs have failed to demonstrate the irreparable harm component and their motion for injunctive relief should be denied.

## POINT IV: THE EQUITIES BALANCE IN FAVOR OF THE DEFENDANTS, AND ISSUANCE OF AN INJUNCTION IS NOT IN THE PUBLIC INTEREST

Plaintiffs contend that because they have demonstrated a likelihood of success on the merits, Defendants' interests are "diminished when the laws at issue likely impinge a federal constitutional right." ECF No. 12-1 at 28-29. Therefore, they contend, the balance of equities and public interest favors Plaintiffs. *Id*. at 28. Again, Plaintiffs have not established a likelihood of success for the reasons stated under Point II, *supra*. Consequently, there is no "harm" to Plaintiffs that tips in their favor. Further, a balance of equities "tipping in favor of the party requesting a preliminary injunction" means "a balance of the hardships against the benefits." *Bronx Harbor Health Care Complex, Inc.*, 2025 WL 3761723 at *2–3. Here, Plaintiffs have not demonstrated any alleged hardship *at all* that tips in their favor. As discussed above under Point I *supra*, Plaintiffs'

First Amendment rights have not been violated and they face no threat of such violations based on the "enforcement" of the Guidance Letter because it is simply unenforceable, non-binding guidance.

Additionally, Plaintiffs cannot prove that a preliminary injunction here is in the public interest. To be sure, Plaintiffs cannot demonstrate that "the public interest would not be disserved by the issuance of a preliminary injunction." *Mendez v. Banks*, 65 F.4th 56, 64 (2d Cir. 2023). When analyzing the public interest prong, a court must consider "the public consequences in employing the extraordinary remedy of injunction," *Massapequa Union Free Sch. Dist. v. New York State Bd. of Regents*, No. 23-CV-7052 (MKB), 2025 WL 929710, at *35 (E.D.N.Y. Mar. 27, 2025), *appeal withdrawn*, No. 25-1135, 2025 WL 2180773 (2d Cir. July 9, 2025) (citing *Yang v. Kosinski,* 960 F.3d 119 (2d Cir. 2020) (quotation omitted), and ensure that the proposed injunction "does not cause harm to the public interest," *Citigroup Glob. Mkts. Inc.*, 673 F.3d at 163 n.1.

Again, because Plaintiffs have not demonstrated a likeliness of success on the merits, the public interest factor weighs against granting Plaintiffs' motion for a preliminary injunction. *See Massapequa Union Free Sch. Dist.*, 2025 WL 929710 at *35 (citing *Yang*, 960 F.3d at 123–24, 135–36); *N.Y. Progress & Prot. PAC v. Walsh,* 733 F.3d 483, 488 (2d Cir. 2013) (explaining that "likelihood of success on the merits is the dominant, if not dispositive factor" in the First Amendment context); *Alexander v. Sutton*, 747 F. Supp. 3d 520, 554–55 (E.D.N.Y. 2024) (finding that "the public interest weighs in favor of granting preliminary injunction relief" where the plaintiffs "have shown a clear and substantial likelihood of establishing" that the regulation and challenged policies and practices "violate the First Amendment"). Issuing a preliminary injunction that bars "enforcement" of the Guidance Letter itself serves no public interest—the Guidance Letter is unenforceable, non-binding guidance.

## **CONCLUSION**

Defendants respectfully request that the Court deny Plaintiffs' motion for a preliminary injunction and dismiss Plaintiffs' complaint, with prejudice, and grant such other and further relief as it deems just and equitable.

Dated: Syracuse, New York
      February 20, 2026

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants
300 S. State Street, Ste. 300
Syracuse, New York 13202
By:_____/s_____
Aimee Cowan
Assistant Attorney General, of Counsel
Bar Roll No. 516178
Telephone:    (315) 448-4800
Fax: (315) 448-4853
Email: aimee.cowan@ag.ny.gov

26